Motion to dismiss appeal denied April 1; argued on the merits at
Pendleton October 27; reversed November 18, 1941

# COOK *v.* COOK
## (111 P. (2d) 840, 118 P. (2d) 1070)

476

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*I. H. Van Winkle,* Attorney General, and *H. H. DeArmond,* of Bend, for appellant.

*E. O. Stadter,* of Bend, for respondent.

KELLY, C. J. On the 21st day of December, 1923, the above named plaintiff filed his complaint herein for divorce charging desertion on the part of his wife the above named defendant.

Summons was served by publication.

On the 15th day of February, 1924, a decree of divorce was rendered. On July 16, 1939, plaintiff, Jack Cook, died.

On July 11, 1940, the above named defendant filed a motion for an order quashing the service of summons, setting aside the order of default and decree entered

on the 15th day of February, 1924, and allowing defendant to appear and defend in this suit.

On the 24th day of July, 1940, the State of Oregon filed a petition to be permitted to intervene herein and file its complaint of intervention.

An order was thereafter made permitting the State of Oregon to file its complaint of intervention, which, in effect, sought to uphold said decree of divorce for the reason that plaintiff herein died intestate and without heirs, which, unless said decree of divorce should be set aside, rendered his estate, alleged in the intervener's complaint, to be of the value of $10,000, subject to escheat to the State Land Board.

After hearing the testimony, the trial court entered an order vacating and setting aside said decree of divorce and granting defendant permission to file an answer herein.

From this last named order, the State of Oregon has appealed.

Defendant moves to dismiss said appeal on the ground that an order vacating a decree of divorce and permitting defendant to answer is not an appealable order.

■ The authorities generally hold that where the consequences of the divorce are such as affect the property rights of the parties to the suit the death of one party or both parties does not affect the right of the unsuccessful party, or his or her representative to institute vacation proceedings.

■ The doctrine is well settled that an order merely setting aside its former judgment and permitting the defendant to answer may be reviewed upon appeal from the final decree and not otherwise. *Carmichael v.*

*Carmichael*, 101 Or. 172, 181, 199 P. 385, and authorities there cited.

■ This rule is not applicable to the instant case for the reason that defendant's sole and only purpose in securing the order vacating the decree of divorce herein was to secure for her the property owned by plaintiff at his death.

The State of Oregon, by its complaint in intervention, seeks to uphold the validity of the decree of divorce, thereby rendering such property subject to escheat to the State Land Board.

The order made by the trial court finally determined the issue, and the only issue presented herein, namely, whether, on the one hand, defendant is the owner of the property owned by plaintiff at the time of his death, or, on the other hand, the decree of divorce divested defendant of her right to claim such property, and, if plaintiff died without heirs, the State of Oregon may be entitled to it as escheated property.

There are three methods by which such an issue has been presented to the courts. One is the method followed herein by motion of the unsuccessful party to vacate the decree of divorce; another is by a writ of error or a proceeding in the nature of a writ coram nobis; and the third method is by an independent suit.

This court has heard cases wherein the last of these three methods of procedure was followed: *Sturm v. Cooper, et al.*, 145 Or. 583, 28 P. (2d) 231; *Sedlak v. Sedlak*, 14 Or. 540, 13 P. 452.

The courts are not in agreement as to the propriety of the course pursued herein. The following cases hold that the issue should be presented by an independent suit or action. *Watson v. Watson*, 1 Hun. 267, 47 How. Pr. 240; *Groh v. Groh*, 35 Misc. Rep. 354, 71 N. Y. S.

985; *Morey v. Morey*, 164 Misc. 527, 299 N. Y. S. 161; *Zoellner v. Zoellner*, 46 Mich. 511, 9 N. W. 831.

The course taken herein has been followed in the following cases: *Gambe v. Gambe*, 22 Pa. Co. Ct. 23; *Fidelity Insurance Co., Appeal*, 93 Pa. 242, sc. under title *Peterson v. Peterson*, 6 W. N. C. 449; *Smith v. Smith*, 3 Phila. 489, sc. *Boyd's Appeal*, 38 Pa. 241; *Bay v. Bay, et al.*, 85 Ohio St. 417, 98 N. E. 109; *Vincent v. Black*, 30 Idaho 636, 166 P. 923.

Contra: *Owens v. Sims*, 3 Coldw. (Tenn.) 544; *Parish v. Parish*, 9 Ohio St. 534, 75 Am. Dec. 482; *Dwyer v. Nolan*, 40 Wash. 459, 82 P. 746, 5 Ann. Cas. 890, 1 L. R. A. (N. S.) 551, 111 Am. St. Rep. 919.

A writ of error was invoked in the following cases: *Wren v. Moss, et al.*, 7 Ill. 72; *Israel v. Arthur, Admr.* 6 Colo. 85, 7 Colo. 12, 1 P. 442; *Givernaud v. Givernaud*, 81 N. J. Eq. 66, 85 Atl. 830.

Besides the Oregon cases mentioned, independent suits were instituted in the following cases: *Johnson v. Coleman*, 23 Wis. 452, 99 Am. Dec. 193; *Bomsta v. Johnson*, 38 Minn. 230, 36 N. W. 341; *Rawlins v. Rawlins, et al.*, 18 Fla. 345; *McCraney v. McCraney*, 5 Iowa 232, 68 Am. Dec. 702; *Rine v. Hodgson*, 9 Ohio Dec. Rep. 275, 9 Ohio Dec. Rep. 104; *Fritz v. Fritz*, 6 Ohio N. P. 258, 9 Ohio Dec. 274; *Brown, et al. v. Grove*, 116 Ind. 84, 18 N. E. 387, 9 Am. St. Rep. 823; *Hill v. Victoria*, 180 Iowa 417, 161 N. W. 72; *Wood v. Wood*, 136 Iowa 128, 113 N. W. 492, 125 Am. St. 223; 12 L. R. A. 891; *Lawrence v. Nelson*, 113 Iowa 277, 85 N. W. 84, 57 L. R. A. 583; *Leathers v. Stewart*, 108 Me. 96, 79 A. 16, Ann. Cas. 1913B, 366.

In the instant case, criticism is made of intervener's transcript on appeal as not properly certified.

The transcript of testimony is subject to this criticism. *Nealan v. Ring*, 98 Or. 490, 493, 193 P. 199; *Johnson v. Johnson*, 131 Or. 235, 282 P. 1082; *Little Applegate Improvement District v. Munsell*, 134 Or. 132, 291 P. 369.

Intervener is hereby granted 20 days from the entry of this order within which to serve and file proper certification of said transcript of testimony.

Defendant's motion to dismiss intervener's appeal is denied.

---

Argued on the merits at Pendleton October 27; reversed November 18, 1941

On the Merits
(118 P. (2d) 1070)

Before Kelly, Chief Justice, and Rand, Belt, Bailey, Lusk and Brand, Associate Justices.

Appeal from Circuit Court, Deschutes County.

T. E. J. Duffy, Judge.

Divorce action by Jack Cook against Maria Jane Cook. A decree of divorce was obtained, and defendant filed a motion to set aside such decree. The State Land Board was granted permission to file a complaint in intervention. From an order setting aside the decree of divorce, the State Land Board appeals.

Reversed.

*H. H. DeArmond*, of Bend (DeArmond, Hamilton & Goodrich, of Bend, on the brief), for appellant.
*E. O. Stadter*, of Bend, for respondent.

BELT, J. This is an appeal from an order of the circuit court setting aside and vacating a decree of

divorce alleged to have been procured through fraud. The decree of divorce was obtained on February 16, 1924. Service on defendant was had by publication of summons. In compliance with the order for publication, a copy of the summons and complaint were mailed to the defendant Maria Jane Cook at Winnipeg, Manitoba, Canada.

After Cook procured the divorce, he married Lillie Dowell on December 11, 1924, but this second marriage did not last long as he secured a divorce from her on March 31, 1925. No children were born as a result of either marriage. Jack Cook died intestate at Bend, Oregon, on the 16th day of July, 1939, leaving an estate of an appraised value of $10,000, accumulated principally after the dissolution of the second marriage.

On July 11, 1940, the defendant filed a motion to set aside the order of default and decree entered in 1924. There were numerous grounds set forth in such motion—all of which have been abandoned on this appeal, excepting the charge of fraud in "procuring an order for the publication of summons."

On July 24, 1940, the State of Oregon, pursuant to petition, was permitted to file a complaint in intervention wherein it was alleged in substance that plaintiff died intestate, "without next of kin or heirs at law" and that by reason thereof the estate was subject to escheat to the State Land Board.

After hearing, the trial court set aside the decree of divorce and granted defendant permission to file her answer in the divorce proceeding. From this last order the State of Oregon through its agent, the State Land Board, appealed.

Defendant thereupon moved to dismiss the appeal on the ground that an order vacating a decree of divorce

and permitting defendant to answer is not an appealable order. The motion to dismiss was denied by this court (*Cook v. Cook*, 111 P. (2d) 840) which pointed out that defendant's sole purpose in seeking to set aside the decree of divorce was to obtain the property left by plaintiff at the time of his death, and that the State of Oregon had sufficient interest to maintain the appeal.

■ Subsequent to the denial of the above motion to dismiss the appeal, defendant again moved to dismiss the appeal, contending that this court has never obtained jurisdiction in that the State of Oregon, after having been permitted to intervene, abandoned the appeal. We see no merit in this contention. Service of defendant's motion to set aside the divorce decree and the affidavit in support thereof was had on the State Land Board. On hearing, the State Land Board appeared through its attorneys, "De Armond & Hamilton", seeking to sustain the decree. After the decree was set aside by the circuit court, the State Land Board filed notice of appeal and transcript of proceedings was brought here for review. We see no abandonment of the appeal by the State of Oregon. The State Land Board, as any agency of the State of Oregon, is here urging that the decree of divorce be reinstated. The court has jurisdiction of the subject matter and of the parties to this proceeding. Motion to dismiss the appeal is again denied.

---

ON THE MERITS

■ In filing the motion to set aside the decree of divorce, defendant applied § 1-1007, O. C. L. A., conferring authority upon the circuit court to relieve a party "at any time within one year after notice

thereof" from a "judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect." Appellant intervenor asserts that the above section of the statute has no application where a decree is procured through fraud and that an independent suit in equity is necessary. No objection to the procedure followed was made in the lower court by intervenor. We, therefore, reserve decision. However, relative to such question, see *Crabill v. Crabill*, 22 Or. 588, 30 P. 320.

Defendant asserts that a fraud was perpetrated upon the court and upon her, in that plaintiff, at the time of securing an order for publication of summons, "well knew where mail would reach her" but, notwithstanding such knowledge, falsely averred in his affidavit for publication of summons that defendant "now resides in Winnipeg, Manitoba, Canada." Defendant further contends that "addressing mail, consisting of summons and complaint, or any mail, to a large city such as Winnipeg, Canada, with a population of approximately 300,000 people, without giving the street and number is not in compliance with the statute requiring complaint and summons to be mailed to defendant's address."

█ We are not convinced that plaintiff was guilty of fraud. According to defendant's own testimony, she was residing in Winnipeg at the time the affidavit for publication of summons was made, and continued to do so for many years. The affidavit, therefore, was not false. Her principal complaint is that, had plaintiff mailed summons and complaint to her at Red Deer Hill, Saskatchewan, Canada—which she asserts is her permanent address—mail would have been forwarded to her at street address in Winnipeg about 200 miles

distant. The correspondence between plaintiff and defendant after the divorce decree was rendered—the address of the latter being Winnipeg—substantiates the theory that plaintiff acted in good faith at the time the affidavit was made. Plaintiff's lips are sealed in death. It may be that if he could speak a plausible explanation would be made of his failure to furnish a street address. We think the affidavit of plaintiff that "she (referring to his wife) is a non-resident and has never resided within and is not now within said state, but now resides in Winnipeg, Manitoba, Canada" was, on its face, sufficient to authorize the court to order substituted service and is in compliance with § 1-607, O. C. L. A., providing in case of publication that the

"court or judge shall also direct a copy of the summons and complaint to be forthwith deposited in the post-office, directed to the defendant at his place of residence, unless it shall appear that such residence is neither known to the party making the application nor can with reasonable diligence be ascertained by him."

Of course, if such averment was wilfully false or if plaintiff knew her street address and concealed the same for the purpose of depriving defendant of an opportunity to be heard, the defendant might well complain of fraud, but such question differs from that of jurisdiction. Certainly, in view of such plain and definite averment, it was not necessary for plaintiff to show that due diligence had been exercised to find defendant in the state of Oregon: *Pike v. Kennedy*, 15 Or. 420, 15 P. 637. The law does not require the doing of vain and idle things.

■ Relative to the question of jurisdiction, it should be borne in mind that defendant tendered an answer on the merits. We conclude that we have before us a

decree which is not void, but which would be voidable if procured by fraud.

 Having held that fraud has not been established, the opinion might well end here. However, defendant is also precluded from prevailing by reason of her notice or knowledge of the divorce decree for many years before she instituted proceedings to set it aside. The law is well settled that a party who seeks to be relieved from a judgment or decree procured through fraud must exercise reasonable diligence: *Carmichael v. Carmichael*, 101 Or. 172, 199 P. 385; Freeman on Judgments (5 ed.) §§ 271 & 1204; 9 R. C. L. p. 451, § 261. Equity aids the vigilant but not those who sleep on their rights.

In the instant case, defendant waited for more than fifteen years before she undertook to set aside the decree of divorce. In the meantime, plaintiff remarried, divorced his second wife, and died. In explanation of the delay, defendant avers in her affidavit supporting the motion to set aside the decree that she "knew nothing of his divorce until after his death"—which it will be recalled was in 1939—and "that said decree of divorce was a surprise to me."

As to whether such averment of the defendant is true, let the record speak:

Letter from plaintiff's second wife to the defendant, dated March 9, 1925, saying that plaintiff told her that he had divorced defendant.

Letter from defendant to plaintiff, dated November 21, 1925, in answer to a previous letter from him in which she said: "Suppose you will be bringing the wife and family. Send me a picture of you and your new wife when you write & you better come back &

build a new house for me & you & your family can live down on the other place.''

Letter from Davis & Davis, then counsel for defendant, dated August 22, 1934—which she admits receiving—thus advising her:

''Your former husband, Mr. Jack Cook, of Bend, Oregon, has been in to see us, and tells us that in a recent conversation with you, you stated to him that you were still his legal wife, and as such entitled to an equity in his property.

''We wish to advise you that on the 16th day of February, 1924, a decree of divorce was granted to your husband by the Circuit Court of the State of Oregon, dissolving your marriage with him. From and after that date you ceased to be his wife and ceased to have any interest in his property. You have now, therefore, no interest whatsoever in his property or any claim against him for support. Since February 16th, 1924 you have both been free to remarry.''

In an affidavit of the defendant made at Prince Albert, Canada, dated August 23, 1939, she averred:

''That I never heard from the said Jack Cook nor did I see him until August 1934 at Red Deer Hill when I met him at the farm of Mrs. Cowan at Halcro.

''That during the conversation I had with my husband then I asked him what he was going to do to support me and he said he had divorced me and I told him that I was still his legal wife and wished maintenance from him and that the divorce which he had obtained in the United States did not affect me.''

Mrs. Annie Corrigal, a sister of the defendant, testified about the meeting of the plaintiff and defendant at their former home in Canada after the plaintiff's second marriage and stated that at such time and place she heard plaintiff tell defendant ''he was divorced and that he had got married again.''

Defendant, according to her own testimony, went under the name of Mrs. Bird since 1926, while living at Winnipeg. Her two adopted children also took the name of Bird. Testimony plainly shows that they were known as man and wife among their friends and associates, although she says she was acting only as Bird's housekeeper.

In the light of the above record, there can be no doubt that defendant knew many years prior to the instant proceeding that plaintiff had secured a divorce from her. Laches, in itself, precludes any equitable relief to defendant from the decree in question.

The order setting aside the decree of divorce is reversed and the cause remanded with directions to reinstate said decree.